UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SHELLY STOCKERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:11CV283 TIA |
| | ) | |
| MICHAEL ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration. The suit involves applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act. Claimant has filed a Brief in Support of her Complaint; the Commissioner has filed a Brief in Support of his Answer. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## I. Procedural History

On June 22, 2007, Claimant filed Applications for Supplemental Security Income payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et. seq. (Tr. 107-110) and for Disability Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 70-77)[1] alleging disability since December 11, 2005 due to manic depression, borderline personality disorder, and hole in heart. (Tr. 140). The applications were denied (Tr. 51-56), and Claimant subsequently requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 45-

[1]"Tr." refers to the page of the administrative record filed by Defendant with its Answer. (Docket No. 14/filed May 2, 2011).

49). On March 25, 2009, a hearing was held before an ALJ. (Tr. 22-47). Claimant testified and was represented by counsel. (Id.). Vocational Expert Delores Gonzalez also testified at the hearing. (Tr. 23-25). In a decision dated April 15, 2009, the ALJ found that Claimant had not been under a disability as defined by the Social Security Act. (Tr. 8-20). After considering counsel's brief in support and the additional medical records, the Appeals Council denied Claimant's Request for Review on January 13, 2011. (Tr. 2-6, 296-394). Thus, the ALJ's decision is the final decision of the Commissioner.

## II. Evidence Before the ALJ

### A. Hearing on March 25, 2009

At the hearing on March 25, 2009, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 397-434, 438). Claimant testified that she is legally separated and has been married three times. (Tr. 399). Claimant has one daughter from her first marriage, and her first husband has custody. (Tr. 400). Claimant lives in Colonial House, a residential care facility and has been there one month. (Tr. 400-01). Claimant is responsible for maintaining her room, her appearance, and sometimes assists with the cooking, cleaning, or doing the dishes. (Tr. 406). Claimant testified that she was having trouble being out on her own. (Tr. 401). Claimant's alleged date of disability is December 11, 2005. (Tr. 401). Claimant completed ninth grade. (Tr. 404). Claimant stands at five feet three inches and weighs approximately 212 pounds. (Tr. 404-05).

Claimant last worked in December 2005 when she lost her job, because she went to the hospital. (Tr. 407). Claimant worked for Meijer Storage for six weeks in 2007 for four hours a day. (Tr. 407-08). Claimant cleaned the register areas stocking bags and taking out the trash.

(Tr. 408-09). Claimant earned enough money to move back to Missouri. (Tr. 408). Claimant worked as a bus monitor from August to December 2005. (Tr. 410). Claimant was responsible for making sure the children were safe and placing children in car seats. Claimant had to pick up the children and place them in the car seat. Claimant rode the bus and served as the monitor. (Tr. 410). Claimant was fired, because she was hospitalized for mental difficulties. (Tr. 411). Claimant worked as a racker-packer for almost a year. In that job, Claimant racked steel parts on a steel line to be plated and then removed and packed them. The maximum weight she lifted was twenty pounds. (Tr. 411). Claimant was fired, because she did not get along with her boss. (Tr. 412). Claimant worked numerous cashier jobs mostly at gas stations and Taco Bell from 2003 until 2006. (Tr. 412-13). Claimant worked at Taco Bell for six months as a cashier running the drive through cash register. (Tr. 414). Claimant left the job, because her boyfriend made her quit. At Walgreens, she started out as a cashier up front and then moved to the pharmacy for three to four years. (Tr. 414-15). Claimant helped stock medications and completed input on the computer for prescriptions. (Tr. 414). Claimant left after the birth of her daughter. (Tr. 415). At the liquor store, Claimant worked for eleven months as a cashier and stocked the beer cooler. (Tr. 415). Claimant was fired by the manager after having an argument. (Tr. 416). As a cashier at the gas station, Claimant stocked cosmetics for seven months. (Tr. 416). As her last job, Claimant worked as a truck washer washing semi-trucks and refueling the trucks. (Tr. 417). Claimant used brushes on long sticks to wash the trucks. (Tr. 417). Claimant was fired from the job. (Tr. 418).

Claimant testified that she has COPD with chronic bronchitis and asthma. (Tr. 418). Both Drs. Hollie and Ojile treat Claimant's COPD. Claimant's counsel indicated that Claimant's

case is limited to Claimant being unable to work due to her mental impairments. (Tr. 418). Claimant testified that she has bipolar, personality disorder, and manic depression. (Tr. 419). Claimant testified that she does fairly well when taking medication, but she still has trouble concentrating and understanding. (Tr. 419). Claimant testified that she experiences panic attacks when she is in a crowd. (Tr. 422). Claimant takes medications daily, and the medications cause her not to sleep. (Tr. 426).

Claimant testified that she has not used drugs for two years and has not consumed alcohol in over ten years. (Tr. 420, 425). The ALJ pointed out that during a consultative examination by Dr. Monolo, Claimant reported smoking marijuana weekly. (Tr. 421). Claimant testified that she quit smoking marijuana around the time of the examination. (Tr. 421). Claimant smokes a package of cigarettes each day. (Tr. 427). Claimant testified that she has been advised to stop smoking, and she has tried to stop smoking. (Tr. 427).

Although Claimant has a driver's license, she does not have a car. (Tr. 427). When she lived in an apartment, Claimant cooked, washed the dishes, vacuumed, and carried the laundry to the Laundromat for washing. (Tr. 427-28). Claimant testified that she has problems sleeping. (Tr. 430). At night, Claimant sleeps four to six hours and then takes a nap in the morning and the afternoon. (Tr. 430).

Claimant testified that she first moved to Colonial House one year earlier after hitting rock bottom with her bipolar. (Tr. 428). Claimant moved back into Colonial House within the past two months. (Tr. 430). With the help she has received at Colonial House, Claimant feels she has come a long way. (Tr. 428). Claimant testified that she is much better. (Tr. 429). Claimant's goal is to be able to concentrate and to manage her life. (Tr. 429). Claimant testified that she is

ready to move from Colonial House although she has not discussed that matter with her counselor. (Tr. 429). Colonial House's goal is to enable Claimant to take care of herself and to be able to live on her own. (Tr. 430).

**2. Testimony of Vocational Expert**

Vocational Expert Delores Gonzalez, a certified vocational rehabilitation counselor, testified in response to the ALJ's questions. (Tr. 431-32). Ms. Gonzalez identified the St. Louis metropolitan area including several counties in Illinois and Missouri as the specific region of the country she would be using in her reference concerning the existence and number of jobs. (Tr. 434). Ms. Gonzalez identified Claimant's vocational history over the last fifteen years as a cashier in a gas station, 211.462-010, classified as light, unskilled work; cleaner, 382.664-010, classified as medium, semi-skilled; cashier in fast food, 311.472-010, classified as light, unskilled; cashier in retail drugs, 299.367-014, usually classified as heavy, semi-skilled; school bus monitor, 372.667-042, classified as light, unskilled; racker, 500.686-010, classified as heavy, unskilled; shipping and receiving clerk, 222. 387-050, classified as medium, semi-skilled; stocker in a liquor store, 290.477-014, classified as light, semi-skilled; truck washer, 919.687-014, classified as medium, semi-skilled; and childcare worker, 359.677-018, classified as light, semi-skilled. (Tr. 434-35). Ms. Gonzalez opined that Claimant has not acquired any skills that could be utilized in other jobs. (Tr. 435).

The ALJ asked Ms. Gonzalez to assume that

> hypothetical individuals with the Claimant's education, training, and work experience (INAUDIBLE). Further assume the individual can perform light duty. The individual must avoid concentrated exposure to fumes, odors, dust, gases. The individual can perform repetitive work according to set procedures, sequence or pace, and maintain regular attendance, work presence without special

> supervision and perform some complex tasks. Could that person perform past work?

(Tr. 435). Ms. Gonzalez opined that Claimant could still work as a cashier, school bus monitor, and stocker. (Tr. 436).

Next, the ALJ asked Ms. Gonzalez to assume that

> the same as hypothetical one except with the following changes as far as mental ability. This individual would be able to understand, remember and carry out at least simple instructions, non-detailed tasks, maintain concentration and attention for two-hour segments over an eight-hour day, demonstrate adequate judgment to make simple work related decisions. Could that individual perform the jobs you provide [*sic*] me for hypothetical one?

(Tr. 436). Ms. Gonzalez opined that Claimant could still perform the positions of a cashier and school bus monitor. (Tr. 436).

In the last hypothetical, the ALJ asked to assume hypothetical two "with the addition that this individual because of the mental condition would have up to four absences per month because of her mental state of mind. Would that individual be able to perform jobs?" (Tr. 436). Ms. Gonzalez opined that such an individual could not perform competitive employment. (Tr. 436).

Claimant's counsel asked Ms. Gonzalez to accept Claimant's testimony as true regarding the amount of sleep she requires during the daylight hours and thus would not be compatible with competitive employment. (Tr. 436-37). Ms. Gonzalez agreed it would not. (Tr. 437).

Next, counsel asked the vocational expert to assume

> an individual the same age, education and past work experience as in the record and the individual was diagnosed with bipolar disorder and panic disorder with agoraphobia, that this individual has an unstable and has unpredictable mood swings with panic and anxiety attacks, which last up to one day in length, sometimes less than the whole day, but as a result possesses a poor ability to adapt to her environment, to socially interact with others, and her ability to maintain and concentration is also poor. Even though she might be able to understand

> instructions at any given time, maintaining or keeping track of those instructions on a consistent basis would be considered poor. And by poor, I mean her functional ability falls below levels commensurate with someone who is able to perform adequately on a job site on a consistent basis. If you were to assume such a hypothetical individual with those limitations, would such an individual be capable of performing any work in the national economy?

(Tr. 437). Ms. Gonzalez responded no. (Tr. 437).

### III. Medical and Other Records

Claimant was admitted on an involuntary 96-hour hold for alcohol and drug treatment on January 12, 2006, after experiencing blackouts attributed to her abuse of Xanax and alcohol. (Tr. 284-85). Claimant admitted to making numerous threats in the past to commit suicide, but she denied ever attempting suicide. (Tr. 284). Dr. Matthew Wilson noted Claimant to be manipulative in that she was constantly bargaining for amenities and privileges. (Tr. 285). Dr. Wilson opined that Claimant's insight into her drug and alcohol use is poor inasmuch as she provides contradictory history. (Tr. 285). Polysubstnace dependence and cluster B traits were Claimant's discharge diagnosis. (Tr. 286). The record from the emergency room indicated that Claimant had been drinking heavily in recent days and abusing Xanax. (Tr. 288). Examination showed her lungs to be clear to auscultation bilaterally. (Tr. 289).

On April 18, 2006, Claimant received treatment in the emergency room at St. Anthony's Medical Center for right lower extremity pain and swelling. (Tr. 267-79). The venous doppler ultrasound showed no evidence of deep venous thrombosis in right lower extremity and mild edema in distal calf. (Tr. 280). The chest x-ray showed no active disease and no change since December 4, 2005. (Tr. 281).

Dr. Bassam Rouleux of the Metro Heart Group treated Claimant for palpations and

dizziness on January 5, 2007. (Tr. 238, 256). Dr. Rouleux found no significant atrial or ventricular tachyarrhythmias. (Tr. 238, 256). On referral from Dr. Hollie, Dr. Rouleux evaluated Claimant in consultation for increasing palpations. (Tr. 245). Claimant smokes one package of cigarettes a day. (Tr. 245). Examination showed Claimant's lungs to be clear and to have good expansion and no labored breathing. (Tr. 246). Dr. Rouleux recommended aggressive risk factor modification, check 2-D echo, schedule a 48-hour monitor, and take aspirin due to Raynaud's disease and chest pain. (Tr. 246). The January 12, 2007 doppler echocardiogram showed mild mitral inefficiency, mild tricuspid regurgitation, and an estimated ejection fraction of 50-55%. (Tr. 251-52).

During a visit to the Family Health Center on January 17, 2007, Claimant reported increased coughing and wheezing and was diagnosed with asthma. (Tr. 234).

The February 8, 2007 x-ray showed a normal chest with no change since November 17, 2006. (Tr. 236).

The April 25, 2007 stress echocardiogram had normal test results. (Tr. 253-54).

On May 3, 2007, Claimant received treatment at the Family Health Center for nasal congestion. (Tr. 232).

During a visit to the Family Health Center on June 6, 2007, Claimant was diagnosed with bronchitis and was treated with medications. (Tr. 231).

The June 8, 2007 Ct of Claimant's chest showed no evidence of pulmonary embolus, small bilateral effusions, small opacities in the right lower lobe, and bilateral pulmonary nodules. (Tr. 193, 237).

On June 14, 2007, Claimant received treatment at the Family Health Center for swelling of

the right leg. (Tr. 229). Claimant reported a history of bronchitis, COPD, right lower extremity edema, and right patellar reconstruction. (Tr. 230).

The July 18, 2007 computerized tomographic scan of Claimant's chest showed mediastinal and right upper lobe infiltrates; patchy right upper lobe infiltrates; and pleural thickening involving the right major fissure. (Tr. 170-74).

In the July 30, 2007 appointment request note, Dr. Hollie referred Claimant for pneumonia and abnormal CT scan. (Tr. 151). On August 23, 2007, Dr. Ojile diagnosed Claimant with COPD, and advised Claimant to cease smoking. (Tr.152).

On September 11, 2007, Dr. Joseph Monolo completed a psychological evaluation on referral by disability determinations. (Tr. 224). Dr. Monolo evaluated Claimant for manic depression, borderline personality disorder, and a hole in her head. Claimant reported last working as a bus monitor in December 2005, but she lost the job due to a hospital admission. (Tr. 224). Claimant reported using marijuana once a week. (Tr. 225). Claimant indicated that her medications, Seroquel, Buspar, Verapamil, Fexofenadine, Advair, Albuterol, Spiriva, Nasonex, and generic for Prilosec to be beneficial. Claimant reported that her symptoms at times persisted for four to five days after using substances. Claimant does not like leaving home. (Tr. 225). Claimant does the laundry, picks up after herself and occasionally cooks. (Tr. 226). Dr. Monolo observed Claimant to be mildly anxious and displayed a subdued affect. Dr. Monolo noted Claimant evidenced intact immediate memory, concentration, thinking skills, and thought processes. (Tr. 226). Dr. Monolo noted that Claimant reported her bipolar symptoms and panic attacks have occurred in the absence of substance abuse; however, the extent her symptoms was difficult to ascertain given her long history of substance abuse. (Tr. 226-27). Dr. Monolo noted

that Claimant's ability to adapt to her environment and her social interaction to be affected by her uneven mood and panic attacks. (Tr. 227). In support, Dr. Monolo cited her infrequency leaving home, not maintaining daily hygiene, engaging in minimal productive activity most days, and having no friends and not engaging in any social activities. Dr. Monolo found Claimant able to understand, remember and follow simple instructions. During the evaluation, Claimant displayed intact concentration and persistence, but Dr. Monolo noted her ability to maintain these could be compromised by her uneven mood and anxiety. Dr. Monolo opined that Claimant's mood and functioning may improve with continued psychiatric treatment, counseling, compliance with medication, and abstinence from substance abuse. Dr. Monolo listed bipolar disorder, panic disorder, polysubstance dependence, borderline personality disorder, and a GAF of 50. (Tr. 227).

The October 16, 2007 computerized tomographic scan of Claimant's chest shower interval resolution of right lung infiltrates but new subsegmental ground glass nodular infiltrates in posterior segment left upper lobe. (Tr. 175).

In the Psychiatric Review Technique dated October 17, 2007, Dr. Holly Weems, Psy.D., found Claimant to have affective disorders, anxiety-related disorders, personality disorders, and substance addiction disorders. (Tr. 94-105). In the Rating of Functional Limitations, Dr. Weems found Claimant to have marked degree of limitations with difficulties in maintaining social functioning, mild degree of limitations in restriction of activities of daily living and difficulties in maintaining concentration, persistence, or pace. (Tr. 102). In support, Dr. Weems noted during psychological consultative evaluation, Claimant reported history of multiple jobs and loss of jobs due to attitude and problems with coworkers. (Tr. 104). Dr. Weems noted that the consultative examiner found Claimant able to understand, remember and follow simple instructions, and persist

and suggested Claimant may improve with continued psychiatric treatment, counseling, compliance and abstinence from substance abuse. (Tr. 104).

In the Mental Residual Functional Capacity Assessment of October 17, 2007, for the current evaluation, Dr. Weems found Claimant's understanding and memory not to be significantly limited. (Tr. 106). Dr. Weems found Claimant's sustained concentration and persistence not to be significantly limited in her ability to carry out simple instructions, ability to maintain attention and concentration for extended periods, and ability to sustain ordinary routine and moderately limited in her ability to carry out detailed instructions, ability to perform activities within a schedule, ability to work in coordination and proximity to others, and ability to complete a normal workday without interruptions from psychologically based symptoms. (Tr. 106-07). Dr. Weems found Claimant's social interactions to be not significantly limited in her ability to interact appropriately with the general public and to ask simple questions and moderately limited in her ability to accept instructions, to get along with coworkers, and to maintain socially appropriate behavior. (Tr. 107). Dr. Weems opined with respect to adaptation, Claimant to be not significantly limited in any area. In support, Dr. Weems opined that during consultative examination, the examiner noted how Claimant demonstrated intact memory, concentration, abstract thinking, judgment, and reasoning. Further, although Claimant reported difficulty leaving home and performing personal care tasks, Claimant reported being able to shop and spend time with others with some difficulty getting along. (Tr. 107). Dr. Weems found that Claimant is capable of performing simple, repetitive or one to two step tasks in a low stress environment away from the general public, and she would perform more effectively with abstinence, sobriety, and consistent psychiatric treatment. (Tr. 107-08). Dr. Weems found Claimant to be partially

credible. (Tr. 108).

In the psychiatric evaluation of December 10, 2007 completed at Colonial House, Claimant started residential care. (Tr. 214). Claimant reported being treated for depression the last three years. (Tr. 214). Dr. Voras prescribed medication as treatment. (Tr. 215).

In the January 16, 2008 psychiatric progress note, Claimant reported Prozac has been helping, and she has not been crying as much. (Tr. 216). The Colonial House staff noted no major problems, and Claimant has been appropriate. Dr. Voras continued Claimant's medication regimen of Prozac, Seroquel, BuSpar, and Ambien. (Tr. 216).

On January 21, 2008, Claimant reported using a nebulizer more. (Tr. 157). In a follow-up visit on February 25, 2008 with Dr. Ojile, Claimant reported feeling good. (Tr. 158). Examination showed a clear chest. (Tr. 158).

In the February 11, 2008 Colonial House psychiatric progress note, Claimant reported Ativan helping a great deal and being much better when she goes to the store. (Tr. 217). Claimant demonstrated good coping skills. Dr. Voras continued Claimant's medications. (Tr. 217).

The February 14, 2008 high resolution computed tomography examination of Claimant's thorax showed interval development of right upper and right lower lobe lesions, and the previously identified ground-glass densities within the left upper lobe no longer present. (Tr. 176-77).

The February 29, 2008 bronchoscopy revealed recurring infiltrates, bilateral; chronic cough with abnormal chest x-ray; exudate throughout tracheobronchial tree; and cultures taken. (Tr. 178). The diagnosis in the cytology report noted negative for malignancy and heavy mucous.

(Tr. 182).

In the March 10, 2008 Colonial House psychiatric note, Claimant reported doing fairly well but frustrated with respiratory problems and expressed desire to stop smoking. (Tr. 218). Dr. Voras continued Claimant's medications and added Wellbutrin. (Tr. 218).

In a follow-up visit on April 10, 2008 with Dr. Ojile, Claimant feeling much better and improvement in her congestion. (Tr. 160). Claimant started exercising. (Tr. 160). Claimant failed to show up for the April 21, 2008 appointment. (Tr. 161).

In the April 14, 2008 Colonial House psychiatric note, Claimant reported increased anxiety and still smoking. (Tr. 219). Dr. Voras continued her medication regimen. (Tr. 219).

The April 18, 2008 high resolution computerized tomography of Claimant's thorax that the previously identified right lung lesions to be resolved; new lesions to have developed within the left lung and right lower lobe; and interval development of a small left effusion. (Tr. 183-85).

In the May 19, 2008 Colonial House psychiatric note, Claimant's Ativan dosage was increased after Claimant learned that her daughter had been placed into a behavioral home for girls. (Tr. 220). Dr. Voras discussed increasing the Prozac dosage to address Claimant's anxiety. (Tr. 220).

The July 21, 2008 computed tomography of Claimant's chest showed new areas of somewhat nodular infiltrates scattered throughout the entire left lung and a minimal amount on the right; and interstitial markings overall similar to the last exams. (Tr. 186).

On July 28, 2008, Claimant reported being taken off Advair and experiencing increased coughing and wheezing. (Tr. 162).

On August 8, 2008, Claimant reported living in an apartment with her boyfriend since

June, and her boyfriend getting in trouble on a binge. (Tr. 221). Claimant considered hurting herself and having a stressful last month with her daughter living at a facility and being diagnosed with bipolar disorder. Dr. Voras continued Claimant's medication regimen and provided supportive therapy. (Tr. 221).

Dr. Steven Crawford treated Claimant on August 27, 2008 and advised her to stop smoking. (Tr. 322). In a follow-up visits on September 29 and October 10 and 17, 2008, Claimant reported pelvic pain. (Tr. 323-25).

On September 26, 2008, Claimant returned for supportive therapy with Dr. Voras. (Tr. 167, 222). Claimant reported cutting herself in effort to release her anxiety and anger but denied the cutting to be a suicide attempt. Recurrent depression and bipolar disorder were listed as her diagnosis. Dr. Voras prescribed medications as treatment. (Tr. 167, 222).

In the September 28, 2008 Psychiatric Evaluation completed at the time of the voluntary admission to Jefferson Memorial Hospital, Claimant reported feeling depressed and suicidal ideations. (Tr. 195). Claimant smokes a package of cigarettes each day. (Tr. 195). In the diagnostic impression at the time of admission, Dr. Sanjeev Kamat listed bipolar affective disorder, increased cholesterol, moderate stresses, and GAF to be 20 to 30. (Tr. 196). Dr. Kamat decided to have Claimant remain in the adult psychiatric ward at Jefferson Memorial Hospital and prescribed Seroquel, buspirone, Ambien, Prozac, and Zyprexa in addition to continuing her other medications. (Tr. 196). In the discharge summary, Dr. Kamat assess Claimant’s GAF to be about 60 to 70. (Tr. 197). Dr. Kamat noted how Claimant had been treated for two days, but she still felt depressed but she was unwilling to stay in the hospital. Because Claimant was discharged against medical advice, she was not given any medications.

(Tr. 197).

On October 19, 2008, Dr. Robert Evens treated Claimant for dyspnea/respiratory distress. (Tr. 199). Dr. Evens noted that somebody had placed a 911 dispatch and reported Claimant to be overdosing on her medications. Claimant denied taking extra medications, but Claimant decided to come into the emergency room for treatment inasmuch as she had been experiencing a worsening problem of her COPD. Claimant reported no chest pain and taking home nebulizer treatments. (Tr. 199). Respiratory examination showed diffuse wheezing throughout but exchange to be fair, breath sounds equal, and respiration nonlabored at rest. (Tr. 200). Claimant reported smoking at least a package of cigarettes each day, and the treating doctor encouraged her to stop. (Tr. 200). The doctor treated Claimant with duoneb nebulizer and Solu-Medrol intravenously and later a dose of prednisone. (Tr. 203). After treatment, the doctor noted that Claimant's condition was stable. (Tr. 203).

The October 14, 2008 chest x-ray showed normal results with no active disease and old granulomatous disease. (Tr. 188-89).

On October 23, 2008, Dr. Ojile treated Claimant for shortness of breath, chest congestion, and cough. (Tr. 165). Dr. Ojile prescribed Avelox and Mucinex as treatment. (Tr. 165).

Claimant reported Mucinex helping her cough during on office visit on October 24, 2010. (Tr. 326). Dr. Crawford noted Claimant still smoked and prescribed medications as treatment. (Tr. 326). In a follow-up visit on November 4, 2008, Claimant reported still having a bad cough. (Tr. 327). In a checkup on November 18, 2008, Dr. Crawford advised Claimant to stop smoking in order to improve Raynaud's. (Tr. 328).

In the psychiatric evaluation of November 8, 2008, Claimant reported feeling depressed

and having suicidal ideations. (Tr. 204). Claimant had been admitted in the psychiatric ward the day before. Claimant reported taking six Ativan tablets every four hours in an attempt to kill herself. Claimant concerned about her thirteen year-old daughter being placed in a behavioral facility. (Tr. 204). Dr. Kamat adjusted Claimant's medications and kept her under observation. (Tr. 205-06).

In a follow-up visit on November 14, 2008, Claimant reported attending counseling every two weeks. (Tr. 168). Claimant reported taking walks with her boyfriend and claimed that he is not currently drinking. Claimant's diagnoses included recurrent depression and bipolar disorder and history of cannabis abuse. Claimant's medications included Zyprexa, Prozac, Seroquel, Buspar, Ambien, and Ativan. Dr. Voras opined that Claimant's judgment to be limited, and she was skeptical whether Claimant was being forthright. (Tr. 168).

In a follow-up visit with Dr. Crawford on November 21, 2008, Claimant complained of a bad cough. (Tr. 329).

On November 22, 2008, Claimant sought treatment in the emergency room for wheezing. (Tr. 207). Claimant reported having been treated the day before and starting on Prednisone and nebulizers, but she still was experiencing shortness of breath. Claimant reported still smoking despite being short of air. (Tr. 207). Examination showed airway to be diminished at bases, and breath sounds equal. (Tr. 208). Dr. Haywood advised Claimant to stop smoking, because the smoking is causing her to breath poorly and has caused irreversible damage. (Tr. 209). Dr. Haywood noted that her chest x-ray showed pneumonia in the upper part of the left lower lobe and prescribed antibiotics and steroids as treatment and use of a nebulizer. (Tr. 209).

In a return visit to the emergency room on November 28, 2008, Claimant reported

shortness of breath, dry cough, and pleuritic chest pain. (Tr. 210). Claimant reported smoking one package of cigarettes a day. (Tr. 211). Examination revealed breath sounds to be equal, respiration to be nonlabored, and bilateral wheezing. (Tr. 211).

Claimant returned for a follow-up treatment with Dr. Crawford on December 5, 2008. (Tr. 330). On December 10, 2008, Claimant returned for treatment of dry mouth and to review her laboratory results. (Tr. 331).

On January 9, 2009, Claimant reported feeling well and no longer seeing a counselor after missing two to three appointments. (Tr. 169). Although Claimant can request another counselor, Claimant indicated that she would not. Dawn, Claimant's caseworker, reported how Claimant admitted taking more or less than her prescribed dosages of medications. Claimant agreed to return to counseling through Comtrea. Dr. Voras opined that Claimant looked improved and calmer. (Tr. 169).

The chest x-ray of January 14, 2009 showed new left lung infiltrates and focal segmental atelectasis in the left mid chest. (Tr. 373).

On January 16, 2009, Claimant reported her tail bone hurting after falling a couple of weeks earlier. (Tr. 332). Dr. Crawford refilled some of her medications. (Tr. 332).

On January 23, 2009, Dr. Crawford noted that Claimant still has a cough. (Tr. 333).

In the admission note of January 24, 2009, Claimant reported shortness of breath and having recently been diagnosed with pneumonia and prescribed Avelox. (Tr. 190). Claimant reported using her breathing treatments more often but she did not feel any better. Claimant was treated with Septra and a steroid injection. (Tr. 190). Dr. Philip Rowden diagnosed Claimant with pneumonia and started IV antibiotics and admitted Claimant. (Tr. 191). Claimant's

discharge diagnoses included pneumonia, asthma, hypertension, and bipolar disorder. (Tr. 192). Dr. Rowden noted that Claimant responded well to the antibiotic treatment. On January 25, 2009, Claimant reported feeling like she is back to her baseline and wanting to go home. (Tr. 192).

On January 29, 2009, Claimant reported receiving treatment in the hospital and being placed on oxygen after the last office visit. (Tr. 334). On February 4, 2009, Claimant returned to Dr. Crawford's office for follow-up treatment after hospital visit for COPD. (Tr. 336). Claimant returned on February 18, 2009 for follow-up treatment for COPD and to discuss medications. (Tr. 337). On March 16, 2009, Claimant returned to Dr. Crawford' s office to discuss the side effects of swelling from her medications. (Tr. 339). On March 23 and 27, 2009, Claimant reported continued swelling. (Tr. 340-41).

In the April 6, 2009 Psychiatry Progress Note, Claimant reported having many physical problems including edema and having been in the hospital for treatment of pneumonia. (Tr. 382). Dr. Voras continued some of Claimant's medications and adjusted the dosages of other medications. (Tr. 382).

## IV. The ALJ's Decision

The ALJ found that Claimant meets the insured status requirements of the Social Security act through March 31, 2011. (Tr. 13). The Claimant has not engaged in substantial gainful activity since December 11, 2005, the alleged onset date. The ALJ found that Claimant has the severe impairments of affective mood disorder, personality disorder, and polysubstance abuse disorder. (Tr. 13). The ALJ opined that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1. (Tr. 14). After careful consideration of the entire record, the ALJ determined that Claimant has the residual functional capacity to perform light work and to be able to perform repetitive according to set procedures, sequence, or pace; to maintain regular attendance and work presence without special supervision; and to perform some complex tasks. (Tr. 15). The ALJ determined Claimant is capable of performing past relevant work as a cashier, school bus monitor, and stocker, and this work does not require the performance of work-related activities precluded by Claimant's RFC. (Tr. 19). The ALJ concluded that Claimant has not been under a disability from December 11, 2005 through the date of his decision. (Tr. 19).

## V. Discussion

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the

individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of

the Commissioner’s decision, we also take into account whatever in the record fairly detracts from that decision.” Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner’s decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the claimant's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ’s decision whether a person is disabled under the standards set forth above is conclusive upon this Court “if it is supported by substantial evidence on the record as a whole.” Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)). “Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion.” Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the

record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly analyze the severity of Claimant's pulmonary impairments. Next, Claimant contends that the ALJ failed to properly formulate her RFC. Claimant also contends that the ALJ erred in finding that she can perform her past relevant work.

A. ALJ's Finding Claimant's Impairments Not Severe

Claimant argues that the ALJ erred in finding her pulmonary impairments were non-severe impairments. The ALJ found that Claimant had the severe impairments of affective mood disorder, personality disorder, and polysubstance abuse disorder. As noted above, Claimant is disabled if she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months and which "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinic and laboratory diagnostic techniques." Brown v. Shalala, 15 F.3d 97, 98 (8th Cir. 1994). An impairment or combination of impairments is severe if it "significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). It is the claimant's burden to establish that an impairment is severe. Id.

At the outset, the undersigned notes that the fact that Claimant did not allege pulmonary impairments in her applications for disability benefits is significant, even though she submitted some medical evidence of pulmonary impairments. In her applications for disability benefits, Claimant alleged disability due to manic depression, borderline personality disorder, and hole in heart. The ALJ found Claimant has the severe impairments of affective mood disorder, personality disorder, and polysubstance abuse disorder and concluded that the impairments, alone or in combination, are not of listing level. A review of Claimant's applications shows that Claimant failed to allege pulmonary impairments as a basis for disability. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (failure to allege disabling mental impairment in application is significant, even if evidence of depression was later developed). Claimant did not testify at the hearing that her pulmonary impairments affect her ability to function, and the ALJ fulfilled his duty of investigating this claim not presented in the applications for benefits but for the first time raised by Claimant in her brief. Further, the undersigned notes that on the record at the hearing, Claimant's counsel indicated that Claimant's case is limited to Claimant being unable to work due to her mental impairments. The undersigned concludes that the ALJ did not err in discounting

Claimant's pulmonary impairments. See Kirby v. Astrue, 500 F.3d 705, 707-09 (8th Cir. 2007) (impairment is not severe if it is only slight abnormality that would not significantly limit mental ability to do basic work activities; claimant bears the burden of establishing impairment's severity). The ALJ opined as follows:

> There is no medical evidence of prolonged symptomatic episodes unremitting to intensive treatment such as intravenous bronchodilators. The record does not document ongoing observations of significant breathing difficulties or even symptoms of prolonged breathing difficulties, .... In fact, treatment for such has been intermittent in nature. Therefore, the undersigned finds the claimant's chronic obstructive pulmonary disease, namely asthma is not severe.

(Tr. 14). Likewise, the undersigned notes at the hearing, Claimant acknowledged she still smokes a package of cigarettes each day.

The undersigned finds the record is devoid of any evidence supporting Claimant's contention that her pulmonary impairments are severe. First, Claimant never alleged that her pulmonary impairments were disabling, and she presented no medical evidence substantiating this claim. Claimant never alleged any limitation in function as a result of her pulmonary impairments in her application for benefits or during the hearing. Indeed, the medical evidence is devoid of any support. The ALJ is under "no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (quoting Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996)). Accordingly, this claim is without merit.

Further, a review of the record shows that the ALJ found Claimant's pulmonary impairments to be non-severe inasmuch as there is no medical evidence of prolonged symptomatic episodes unremitting to intensive treatment and her treatment had been intermittent. While an

ALJ may not disregard subjective complaints solely because they are not fully supported by the medical evidence, the ALJ may discount such complaints if they are inconsistent with objective medical findings. Jones v. Astrue, 619 F.3d 963, 975 (8th Cir. 2010). The medical record supports the ALJ's determination that Claimant's pulmonary impairments to be not severe. Accordingly, the objective medical evidence on the record shows Claimant's pulmonary impairments to be non-severe.

The undersigned may reject the ALJ's decision only if it is not supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is that which "a reasonable mind might accept as adequate" to support the Commissioner's conclusion. Smith v. Shalala, 987 F.2d 1371, 1373 (8th Cir. 1993). The Court may not substitute its own judgment or findings of fact when reviewing the record for substantial evidence. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

B. Residual Functional Capacity

The ALJ found that Claimant retained the ability to perform light work with the additional limitation that she was able to perform repetitive work according to set procedures, sequence, or pace. The ALJ further found that Claimant could maintain regular attendance and work presence without special supervision, and that she could perform some complex tasks.

With regard to the ALJ's determination of Claimant's RFC, the undersigned finds that the ALJ properly assessed the medical evidence and Claimant's credibility. "The ALJ must determine a claimant's RFC based on all of the relevant evidence." Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004). It is the responsibility of the ALJ to assess a claimant's RFC based on all the evidence, including medical records, the opinions of treating and examining physicians, as well as

the claimant's own statements regarding his limitations. McGeorge v. Barnhart, 321 F.3d 766, 768 (8th Cir. 2003); McKinney v. Apfel, 228 F.3d 860 863 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). "In analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable conclusions about the individuals's strengths and weaknesses." SSR 85-16. SSR 85-16 further delineates that "consideration should be given to ... the [q]uality of daily activities ... [and the a]bility to sustain activities, interests, and relate to others *over a period of time*" and that the "frequency, appropriateness, and independence of the activities must also be considered." SSR 85-16.

An ALJ must begin his assessment of a claimant's RFC with an evaluation of the credibility of the claimant and assessing the claimant's credibility is primarily the ALJ's function. See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) (finding a claimant's credibility is primarily a matter for the ALJ to decide); Pearsall, 274 F.3d at 1218. In making a credibility determination, an ALJ may discount subjective complaints if they are inconsistent with the record as a whole. Holstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). In Polaski, the Eighth Circuit set out factors for an ALJ to consider when determining the credibility of a claimant's subjective complaints. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190. 1193 (8th Cir. 1995). However, the Eighth Circuit has held that an ALJ is not required

to discuss each Polaski factor methodically. The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). An ALJ is only required to consider impairments he finds credible and supported by substantial evidence in determining a claimant's RFC. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) ("The ALJ properly limited his RFC determination to only the impairments and limitations he found to be credible based on his evaluations of the entire record." )

Determination of residual functional capacity is a medical question and at least "some medical evidence 'must support the determination of the claimant's [residual functional capacity] and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)). Further, determination of residual functional capacity is "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Similarly, in making a finding of residual functional capacity, an ALJ may consider non-medical evidence, although the residual functional capacity finding must be supported by some medical evidence. See Lauer, 245 F.3d at 704.

The ALJ's determination of Claimant's RFC is supported by substantial evidence in the record. Likewise, the ALJ noted several inconsistencies within the record, and he pointed out the lack of supporting objective medical evidence. The ALJ noted that Claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are not credible. The ALJ opined that the medical record does not show that any physician imposed any functional restrictions of Claimant or found her to be totally disabled. The ALJ found Claimant to be less than forthright and made inconsistent statements to medical providers. The ALJ may discount subjective complaints if inconsistencies are apparent in the evidence as a whole. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (subjective complaints may be discounted if evidence as a whole is inconsistent with claimant's testimony). The ALJ noted how Claimant was involuntarily admitted on January 12, 2006 after experiencing blackouts. The treatment notes indicate that the blackouts were caused by her level of intoxication from alcohol and abuse of Xanax. Indeed, Claimant provided conflicting information regarding her use of alcohol and Xanax, and the examining doctor found Claimant to be manipulative and constantly bargaining for amenities and privileges. Likewise, at the hearing, Claimant testified that she had not consumed alcohol in over ten years. The ALJ listed facts from Claimant's hearing testimony regarding the Polaski factors and the medical record that reflected upon Claimant's ability to perform light work such as her impairments being fairly well controlled with medication and treatment. Further, the ALJ pointed out other inconsistencies in the record that tended to militate against Claimant's credibility. See Samons v. Astrue, 497 F.3d 813, 818 (8th Cir. 2007) (finding that substantial evidence supported the ALJ's decision where there were too many inconsistencies in the case). Those included Claimant's testimony at the hearing, Claimant's non-compliance, the absence of objective medical evidence of deterioration, the absence of any doctor finding Claimant disabled or imposing any functional limitations, her poor work history, and her inconsistent reporting regarding drug use and alcohol consumption. Based on the ALJ's analysis of the medical

evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that Claimant retains an RFC to perform light work with the additional limitation that she be able to perform repetitive work according to set procedures, sequences, or pace. The ALJ's determination does not contradict any of the medical evidence, and nothing else in the record detracts from his decision. Based on the ALJ's analysis of the medical evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that Claimant retains an RFC to perform light work. Thus, the undersigned finds that substantial evidence supports the ALJ's finding that Claimant has the residual functional capacity to perform light work. The ALJ thus concluded that Claimant could perform her past relevant work as a cashier, school bus monitor, and stocker.

The record evidence demonstrates that Claimant's impairments generally improved and were controlled with treatment. Claimant reported to a number of medical providers that her medications were helpful, and at the hearing, she testified she does fairly well when compliant with her medications. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (noting that if impairment can be controlled by treatment, it cannot be considered disabling); see also Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). The ALJ also properly reviewed the medical records and found that the objective findings did not support her subjective allegations. See 20 C.F.R. § 416.929(c)(1)-(2) (ALJ should look at medically documented "signs" and findings to determine intensity and persistence of symptoms and how they actually affect the person); Forte v. Barnhart, 377 F.3d

892, 895 (8th Cir. 2004) ("[L]ack of objective medical evidence is a factor an ALJ may consider.").

The ALJ also noted how the medical record is replete with documentation of non-compliance on the part of Claimant with respect to taking her medications and abstaining from abusing polysubstances. If the ALJ finds that the claimant has not been compliant with prescribed medical treatment, the ALJ is justified in disregarding the claimant's subjective testimony regarding her disability. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001) (ALJ may consider noncompliance with medical treatment in decision to dispense with claimant's subjective complaints). The undersigned further notes how Claimant had been advised to cease smoking, but at the time of the hearing, she admitted to still smoking one package of cigarettes each day. See Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006) ("[A]n ALJ may properly consider the claimant's noncompliance with a treating physician's directions, including failing to take prescription medications, seek treatment, and quit smoking."); Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 1996) (citing Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (holding impairments which are controllable or amenable to treatment do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including cessation of smoking, without good reason is grounds for denying an application of benefits). Such noncompliance with treatment is a proper factor in the credibility analysis.

The ALJ also considered that although Claimant alleged a disability onset date of December 5, 2005, there was no medical evidence showing that any doctor recommended that Claimant stop working or imposed significant physical and/or mental limitations on Claimant's capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no

examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995) (lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints).

Finally, the ALJ noted that Claimant's work history and earnings record even prior to her alleged onset date severely detract from her credibility regarding the severity of her impairments alleged and her overall motivation to work inasmuch as her earnings record documents poor and overall inconsistent earnings. A poor work history lessens a claimant's credibility. Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993); see also Ramirez v. Barnhart, 292 F.3d 576, 581-82 (8th Cir. 2002) (poor work record and financial motivation for benefits may contribute to adverse credibility determination when other factors cast doubt on claimant's credibility); Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) (a poor work history "may indicate a lack of motivation to work, rather than a lack of ability.").

Inasmuch as the ALJ articulated inconsistencies upon which he relied in discrediting Claimant's credibility, his credibility finding is supported by substantial evidence on the record as a whole.

After assessing Claimant's credibility, the ALJ formulated Claimant's RFC. Claimant's

contention that the RFC is not supported by at least some medical evidence is without merit. A review of the record shows that the ALJ considered all of the credible evidence on the record including opinion evidence from Dr. Monolo. See Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) ("Given the ALJ's specific references to findings set forth in Dr. Michaelson's notes, we find it highly unlikely that the ALJ did not consider and reject Dr. Michaelson's statement that Wildman was markedly limited."). In relevant part, Dr. Monolo found as follows:

> The examination noted the claimant appeared only mildly anxious but was able to adjust well to the evaluation. Her speech was clear and logical. She had a subdued affect but at times exhibited appropriate smiling. She oriented and displayed no loose associations, delusional thinking, or other disordered thoughts. Her memory and concentration were intact and she displayed basic judgment and reasoning. The examiner summarized that the claimant evidenced intact memory, concentration, thinking skills, and thought processes. She had reported having panic attacks and bipolar symptoms; "however, the extent of her symptoms is difficult to ascertain given her long history of substance abuse." She was diagnosed with bipolar disorder and panic disorder both by history and reported symptoms, polysubstance abuse (in partial remission per the claimant's report), and borderline personality disorder with an assessed GAF of 50.

(Tr. 17). Dr. Monolo opined that Claimant's mood and functioning may improve with continued psychiatric treatment, counseling, compliance with medication, and abstinence from substance abuse.

Dr. Weems, explicitly discussed Dr. Monolo's findings in formulating the RFC. In the Rating of Functional Limitations, Dr. Weems found Claimant to have marked degree of limitations with difficulties in maintaining social functioning, mild degree of limitations in restriction of activities of daily living and difficulties in maintaining concentration, persistence, or pace. Dr. Weems noted that the consultative examiner, Dr. Monolo, found Claimant able to understand, remember and follow simple instructions, and persist and suggested Claimant may

improve with continued psychiatric treatment, counseling, compliance and abstinence from substance abuse. Likewise, in the Mental Residual Functional Capacity Assessment, Dr. Weems found Claimant's understanding and memory not to be significantly limited; her sustained concentration and persistence not to be significantly limited in her ability to carry out simple instructions, ability to maintain attention and concentration for extended periods, and ability to sustain ordinary routine and moderately limited in her ability to carry out detailed instructions, ability to perform activities within a schedule, ability to work in coordination and proximity to others, and ability to complete a normal workday without interruptions from psychologically based symptoms. Dr. Weems found Claimant's social interactions to be not significantly limited in her ability to interact appropriately with the general public and to ask simple questions and moderately limited in her ability to accept instructions, to get along with coworkers, and to maintain socially appropriate behavior. In support, Dr. Weems opined that during consultative examination, the examiner noted how Claimant demonstrated intact memory, concentration, abstract thinking, judgment, and reasoning. Further, although Claimant reported difficulty leaving home and performing personal care tasks, Claimant reported being able to shop and spend time with others with some difficulty getting along. Accordingly, Dr. Weems found that Claimant is capable of performing simple, repetitive or one to two step tasks in a low stress environment away from the general public, and she would perform more effectively with abstinence, sobriety, and consistent psychiatric treatment. A review of the ALJ's decision shows that his findings are largely consistent with Dr. Weems' opinion.

The substantial evidence on the record as a whole supports the ALJ's decision. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed

merely because substantial evidence may support a different outcome. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

C. Ability to Perform Past Work

Based on Claimant's description of how she performed her past relevant work as a cashier, school bus monitor, and stocker, the ALJ found that Claimant was able to perform her past relevant work. Claimant contends that the ALJ erred by not making specific findings about the mental demands of her past relevant work. See SS82-62, 1982 WL 31386 (1982) (holding that a decision that a claimant can perform past relevant work must include findings as to (1) the claimant's RFC; (2) the physical and mental demands of the past work; and (3) whether the claimant's RFC would permit a return to the past work). "A conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to [her] past work." Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991).

The Social Security regulations define "past relevant work" as "work experience [which] ... was done within the last fifteen years, lasted long enough for [the claimant] ... to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). If the claimant is found to be able

to perform the duties of his [or her] past relevant work, then he or she is considered not disabled and therefore ineligible for benefits. Bowen v. City of New York, 476 U.S. 467, 471 (1986); Martin v. Sullivan, 901 F.2d 650, 652 (8th Cir. 1990).

At step four, the ALJ determines whether claimant can return to his past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). Additionally, '[a]n ALJ may find the claimant able to perform past relevant work if the claimant retains the ability to perform the functional requirements of the job as [] he actually performed it or as generally required by employers in the national economy." Samons v. Astrue, 497 F.3d 813, 821 (8th Cir. 2007). The burden at step four remains with the claimant to prove his RFC and establish that he cannot return to his past relevant work. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009).

The ALJ considered how Claimant performed work as a cashier, school bus monitor, and stocker The ALJ opined that Claimant's past work as a packager did not exceed the limitations set forth in his RFC, and thus Claimant could perform her past relevant work. Likewise, the ALJ with the assistance of a vocational expert made adequate inquiry into the physical and mental demands of Claimant's past relevant work and her ability to return to such work. The ALJ included in the hypothetical questions posed to the vocational expert only the limitations which the ALJ found credible. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."). Where the hypothetical question precisely sets forth all of claimant's physical and mental impairments, a vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision. Id. ("Based on

our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits." (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations). As such, the undersigned finds the ALJ's decision that Claimant is able to perform her past relevant work is based on substantial evidence.

Considering all the evidence in the record, including that which detracts from the ALJ's conclusions, the Court finds that there is substantial evidence to support the ALJ's decision. "As long as substantial evidence in the record supports the Commissioner's decision, [this Court] may not reverse if [if] substantial evidence exists in the record that would have supported a contrary outcome or [if this Court] would have decided the case differently." Krogmeier v. Barnhart 294 F.3d 1019, 1022 (8th Cir. 2002) (internal quotations omitted); accord Gowell, 242 F.3d at 796.

D. New Evidence Before the Appeals Council

Claimant obtained treatment and records from Advanced Psychiatric Services, DeSoto Family Practice, Caduceus Corporation, Jefferson Orthopedic Associates, and Advanced Pain Centers after the ALJ issued his decision. (Tr. 6, 296-394). Records of that treatment were submitted to the Appeals Council. The Appeals Council stated that it had considered the additional evidence and determined that it did not provide a basis for changing the ALJ's decision. (Tr. 2-6, 329-536).

The regulations provide that the Appeals Council must evaluate the entire record,

including any new and material evidence that relates to the period before the date of the ALJ's decision. 20 C.F.R. § 404.970(b); Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000). Additional evidence submitted to the Appeals Council is material when it is "relevant to the claimant's condition for the time period for which benefits were denied." Lamp v. Astrue, 531 F.3d 629, 632 (8th Cir. 2008) (quoting Bergmann v. Apfel, 207 F.3d 1065, 1069 (8th Cir. 2000)). The newly submitted evidence becomes part of the administrative record, even though the evidence was not originally included in the ALJ's record. Cunningham, 222 F.3d at 500. This Court does not review the Appeal Council's denial but determines whether the record as a whole, including the new evidence, supports the ALJ's determination. Cunningham, 222 F.3d at 500.

The Eighth Circuit interprets a statement by the Appeals Council that additional evidence "did not provide a basis for changing the ALJ's decision" as a finding that the additional evidence in question was not material. Aulston v. Astrue, 277 F. App'x 663, 664 (8th Cir. 2008) (citing Bergmann, 207 F.3d at 1069-70) (noting that whether additional evidence meets criteria of materiality is a question of law that courts review de novo).

Although the Appeals Council denied Claimant's request for review without comment, records reflect that the Appeals Council received the additional records; that it made them part of the record; that it considered these records; and that it concluded that these records did not provide a basis for changing the decision of the ALJ. (Tr. 2-6). After careful review, the Court concludes that some of the medical records submitted to the Appeals Council do not relate to the period on or before December 11, 2005, and some of medical records are for medical conditions not alleged to be disabling. (Tr. 321, 324-25, 348-72). One of the records is a duplicate of a medical record already submitted. (Tr. 381). Some of the additional records submitted to the

Appeals Council address Claimant's condition and document her medical treatment received after the ALJ issued his decision. (Tr. 304-07, 310-21, 343-47, 370-72, 379, 383-94). See e.g. Roberson v. Astrue, 481 F.3d 1020, 1026 (8th Cir. 2007) (finding no error in Appeals Council's decision that new records prepared seven months after ALJ's decision described claimant's condition on date records were prepared, not on earlier date, and consequently were not material). The Regulations provide that an application is effective through the date of the ALJ's decision. 20 C.F.R. § 404.620.

The additional records support the ALJ's determination that Claimant is not disabled. If the limitations set out in the new medical evidence indeed persist, Claimant's recourse is to file a new application for benefits, alleging an onset of disability after the date of the ALJ's decision in this case. See Riley v. Shalala, 18 F.3d 619, 623 (8th Cir. 1994).

While there is evidence to support a contrary result, the ALJ's determination is supported by substantial evidence on the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted). "If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." Id. (quoting Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of March, 2012.